Good morning, Your Honor. What's at play here is the conflict between two tort immunity acts, 2201 and 3102. 2201 basically provides that municipal employees are immune from their actions, liability for their actions when they act pursuant to their discretion, carrying out policy in what they do in the municipal business. On the other side, 3102 provides that a municipality has a duty to maintain its property in a reasonably safe condition for the people intended to use that property. And what came to play here is this case involved an accident on a county highway, county road, that from the evidence appeared to be in some poor condition. And then at the end of the plaintiff's case, a motion for verdict was filed and the court ruled basically that 2201 immunized the county based on the employee's immunity. I would first note just briefly that at the trial level, the plaintiff never raised the affirmative defense of 2109, which immunizes the municipality based on the immunity of the employee. So in a technical aspect, the plaintiff never raised the affirmative defense, and it would appear that would be the only way the municipality could obtain immunity. I thought that was disputed, that they said that they did raise it in their motion. 2109? Yeah. Your Honor, I don't recall it ever being raised. I could be wrong about that, but before I wrote the case, I was very careful to go back and look at the record. It was never argued, never raised. But anyway, then if we go through the evidence at trial, the defendant never covered his basis, covered its basis on the evidence established that it was immune under 2201. We had presented evidence to the plaintiff who said he was started bucking, veered out of control, and flipped over, and he was injured. He went back to the scene two days in a row with two of his sons, took pictures. Pictures were admitted in the evidence that clearly showed his buckling, waving. I called the county engineer to the stand and asked him about the road. He said at that time they were concerned about this problem. He called it bleeding, and they were out looking for this. And the reason he gave was, I guess there was some oil project going on, so five tankers a day just from that one business were covering this highway, plus the additional semi-traffic. And so they were concerned about it. But then he admitted what he was looking for. He was familiar with this squishy, wavy aspect that is caused by bleeding. He was out looking for it. What he admitted was he couldn't see that from inside the cab of his truck. So these drive-bys that he was doing, which he admitted he did two days before, he could not find what he was looking for by drive-by. And so it is our contention that based on the evidence that was presented, in just that nutshell, the jury could have determined that they were on notice, or should have been on notice, a constructive notice, that this condition existed. The jury could have found that, hey, he should have gotten out of the truck. He should have walked the area. He would have found it just like the plaintiff did with his sons the next day when they went back out. So we think there's constructive notice which would create liability under 3-102. So you're saying he never drove over it? Or he said he never drove over it? No, the cab engineer said he drove over it a few days before. And it wasn't there? Correct. But he admitted he couldn't, by driving over it, he couldn't see the problem. But yet it turned the other truck over, allegedly? Yes. And so, but then when the defendant called its engineer to the stand, it didn't go through any discretionary act. The general mentioned discretion. But he never asked the engineer, what is your role in trying to determine the safety of that road? What discretion do you use to go out and find the safety hazards of this road? They never covered it. They never got near it. There was no evidence. So 2-201 would not be a proper basis for immunity. But then we get into the conflict with 3-102 and 2-201, because 3-102 creates an affirmative duty of the municipality to make its property safe for the intended users. And plaintiff was clearly an intended user of this highway. And there was evidence to support that it was unsafe. So if this was raised in the Gepstein case, on point, same issue. A woman goes out in the alley, steps in a hole, falls over, gets injured. The municipality in that case raised the same defense, 2-201. The court said no. They didn't prove anything. It was the same thing. They didn't prove why that provision would give them immunity. Discretionary acts didn't cover anything. You could go out and murder someone, and that's a discretionary act. So I think what the courts are starting to lean towards in these cases is that this broad, encompassing 2-201 doesn't really have any meaning, because everything's a discretionary act. And a municipality that simply moors or acts recklessly in a non-endangered conditions should not be immune under those provisions. There is immunity under 3-102B, and that's the safety, or the check system, if the municipality could raise the issue. Well, we have a plan in tact to go out and find safety issues. And our plan is reasonable, and under that plan, this would not have been caught. And we implement that. They didn't raise that as an affirmative defense, and they didn't cover it in the evidence. They never followed up and asked this guy, the engineer, what did you do? Do you have a safety plan in tact? I'm not going to ask that guy that. That's the defendant's duty. And they didn't do it. They didn't cover bases on it. They didn't say, hey, what's your safety plan? How do you go out and check for this stuff? So we think, based on the Gutstein case and the case itself, it was right on point. And the court specifically said in there that the legislature could not have intended for 2-201 to trump 3-102. And it's a very similar type liability situation in the municipality. The same defense was raised in the Anderson case. The court was right on point and said we cannot buy that. The legislature intended that. So the plaintiff was, you know, the trial court could have, I guess, reserved the issue after the case was over. But that didn't happen. The plaintiff was cut short of his case, and we think it was fair on the trial court to grant the motion for direct averting based on 2-201. Thank you. Counsel? Good morning, Your Honor. My name is Joe Blier. I'm here representing Marion County. And we're here to ask this court to affirm the trial court's entry of the direct averting case. It comes before you after the plaintiff had his opportunity in court. We heard the evidence. The judge, considering all the evidence in light, most favorable to the plaintiff, decided that the plaintiff had failed to state a cause of action against the defendant. The direct averting was entered. The issues here, as counsel pointed, two sections of the Tort Immunity Act, the 3-102 and 2-102. A couple of things, Your Honor, Lexton asked. It was, 2-109 was raised in my written motion for direct averting. It was on the paragraph 11 of the motion for direct averting. And it's found at the record of C-349 where the 109 was issued. I will tell the court that it was not, the 109 was not raised in the answer to the complaint, because at the time, when the answer, the only defendant was the county. I cited my brief, the Kendall v. Clayton Township case, and after I read and studied that case again in preparation for this argument, there's a lot of issues in that case that are a lot directly on point or could give this court direction as to affirming the trial court's granting of the direct averting in this particular case, because it talks about the 2-201 and 2-109, and if you would agree with the plaintiff's argument in this particular case that the 2-109 is not raised or isn't part of this case, it would, the trial court goes, or the appellate court in the Kendall v. Clayton case goes to a very good explanation that if you had to raise 2-109 instead of every, and 2-201, the plaintiff could circumvent the whole thing by not naming an individual, this particular case, the road commission, not naming the county engineer or the road commissioner. And in this particular case, as in Kendall County Township, Clayton Township, only the entity was named, and as the court said, a contrary decision or following the plaintiff's decision would lead to circumventing both sections, and that is not what the basis of the appellate, or the Tort Immunity Act is. You know, this, as a direct averting, you've got to look at the light most favorable to the plaintiff. We've got to look at the reason on this particular township road, the plaintiff, and I think the court may testify that on the day of the accident, he was driving, and for whatever reason, he lost control of his vehicle and it flipped. Now, he testified that from sitting in his vehicle and from driving on that particular road, he could not see any condition with the road itself either. He said only after he got out of the vehicle at the time of the accident, and also came back at a later time with his two sons on two different occasions, it was only at that time that he saw this, what he claims was a washboard effect on the roadway, which led him to believe that there was some type of problem with the particular road. In response to the honorable court's question, the county engineer, two days before the accident, he could not observe any problems with the road or any condition on the road from driving the road. There is no duty for him to get out because there was nothing there for him to look at that required him to get out. So the facts of the case, and as the trial court pointed out, as far as the 3-102 section, is that the plaintiff has to show, and there is a plaintiff, it's not an intended permitted use of the road. This plaintiff is an intended permitted user of the road. I just cited the whole section, that whole statute in my affirmative defense. But the plaintiff, there has to be some type of constructive notice of the roadway that would cause, that would then force the duty on the municipality to undertake some action. And as the trial court stated during our rather long discussion on the directed verdict, the trial court said there's not one cell of evidence, any part of evidence, that there was any knowledge on the county at any existence of any condition in this roadway prior to this accident. As a matter of fact, it's cited in my brief, counsel for the court, there wasn't any evidence of any particular notes. I intend to ask Mr. Gargan this question, because that was one of my questions coming up, and I apologize that I'm coughing so much out there. But I didn't understand what Mr. Gargan's response was to the court's question when he said, so far, yes. So I'm sure he's going to have an answer to that. Do you have any idea what that meant? Well, I guess that the plaintiff was anticipating that the... I mean, he closed his case. That's right. The court, I guess he meant, the only thing I can assume by that is that maybe I should have reordered my case and offered no evidence. But we're at that point. Up to that point, the plaintiff has put on all this evidence, the plaintiff has rested, and there's been no evidence. And I don't know of any evidence that there was any knowledge of any particular... there's nothing on the record that there was any evidence in that regard. Now, I agree that sometimes looking at the Tort Immunity Act can be confusing, and I practice it quite extensively, but sometimes these sections kind of intertwine and seem to contradict each other. But in the Kimball case, we have two sections, the 2-201 and 3-102. 3-102 is basically for the ministerial acts, and you can talk in the discussion that we had with the trial court. I would agree that 3-102 would present a problem for the court, the county, began to undertake or repair the road. But that's not the evidence we have here. What we have here is that the plaintiff failed to produce any evidence that there was knowledge. I also raised 2-201 of the Discretionary Act of the county engineer, because we knew at the time of the trial that the county engineer was looking that there was heavy traffic on this road. He was considering what to do, if anything. And matter of fact, in response to the court's question, that's why he drove it two days before the accident. And I went through and I asked the questions of the county engineer. There's no question that the county engineer of Marion County is the person that is responsible for a discretionary act. He not only has to be a discretionary, he also has to be making the policy decisions. And I bring that up. The plaintiff cites the Gernstein case. I have read the Gernstein case. I can, I would agree with the finding of the appellate court in that particular case. But the facts of that case have no bearing on this particular case. If you read that case, the, there was a long discussion that the people had complained to the city that there was a problem with this alley, that someone, there was question and facts in the case that someone within the city had placed this particular alley on a list of some sort to, whether to undertake to repair the alley. And as the court talks about, once you undertake the duty, once you put it on the list, it becomes a ministerial act. And it's, and I can't think of the name of the case, it was a city, City Hall, and Judge Stewart wrote an opinion about the sewer pump. And he talked about, you know, it was a discretionary act as to whether or not the city should have put the sewer pump in the hole, but once the sewer pump is in the hole, it becomes a ministerial act whether or not to turn the sewer pump on. And that was, and Judge Stewart found that once the pump was in there, it was not a discretionary act to turn it on, it was there for ministerial. That's not what we have here, that's what we have in the Gernstein case. The, it's very clear that the county engineer was both the decision maker and the policy maker, and the tort immunity act, like it or not like it, when you have a person making a both a discretionary and a policy decision, he has absolute immunity for those actions as to whether or not to undertake to repair this particular road. The, even in the Kindle Act, or the Kindle case, and also the Gernstein Act, they talk about the, you know, the decision maker, the point that Kindle says, decision maker like judges should be free from liability when making decisions based upon the best perception of the public needs. And I think that the evidence in this case is twofold. One, there was no evidence at the court, at the case, or lack of evidence, that there was any knowledge on this Marion County that there was a condition in their roadway that would have caused the problem. Two, that the county engineer has immunity because it was his decision as to how to take care of that road and when to take care of it. And I think the two sections are not mutually exclusive. They go hand in hand in this particular case as to the facts that plaintiff alleged. 102 talks about ministerial duties. There's no evidence that we had knowledge. 2201 is an absolute immunity because the, it was the county engineer's total discretion as to whether to do anything this particular road and to when to do it. And I think based upon the lack of evidence at the trial as presented by the plaintiff, even looking in the lack of evidence, the lack of evidence that the plaintiff, there is no evidence that knowledge on the city of Marion County or that the, Jerry Cunningham, the county engineer, was not clothed in absolute immunity under 2-101, 2-201. And we would ask that the, this honorable court affirm the trial court's granting of the direct verdict in the closure of the plaintiff's case. If I have no questions, I thank you. Thank you, counsel. Your Honor, I would follow my sword on the 2-109 issue. I did go back and check. He did have that in his motion. I guess I was paying attention to his original pleadings in the record as far as argument. Also, on your question, you asked counsel. Looking back over a year ago, Your Honor, I can't, I didn't state that. It's in the record. I said so far, yes, in response to that. It was three words. I cannot at this point know what was on my mind other than I might have been referring to, I'm following the judge's logic. Judge McKinney has a very unique way of the way he sets fact patterns out and they're very colorful. And we went, this is a great length, we went through this. But I would know, and I don't have a page under the record, this is a very, it would be at the very last paragraph of the judge's ruling. I tried to raise this issue. Judge, they would have constructive notice by the evidence of the fact that he didn't get out and look at the truck and he said this, that dog won't hunt. So I argue this constructive notice. And that, and I think it's very reasonable to assume if you look at this in a light most favorable to the plaintiff, a jury could come to that conclusion. And the plaintiff should not be knocked out if we follow the standard. A jury could come to that conclusion. They could come to the other conclusion that it's not the defendant's fault, but the jury wasn't going to have to do its job. It could easily come to the conclusion the engineer would have gotten out and walked the road and would have found a condition. And the engineer admitted it. But by the system he was using, inspecting, he couldn't find it by driving. He couldn't, he couldn't find what he was looking for by driving by. So I think a jury could easily come to the conclusion that they had constructive notice or should have had notice, constructive notice, of the condition and that that caused the injuries. I think the jury could very easily come to that conclusion. Now, 2, 201, if we took defendant's argument and put it in motion, will cover every act of every employee of the municipality. Everything you do in life is discretionary. Drinking a glass of water is a discretionary. You can wait to do it five minutes later, you can do it now. So that's almost unreasonable to concede that. But if you look, the Anderson case was spot on point. It specifically says 2, 201 cannot trump 3, 1, 2, and the legislature could not have intended that result. There's a statutory duty for the municipality to provide safe roads, reasonably safe roads, for the intended users. And there's affirmative defenses of that. And like the affirmative defense they raised, there was no evidence put on by them. They didn't ask the engineer. Nothing was covered by the engineer about what your discretionary duties are, whether or not you acted in any discretion in deciding whether this road was safe. He didn't even go there. He just, I asked him, you know, you drove by it two days before, and he was concerned about that area. The defendant didn't go into detail to cover the basis on 2-201, but what is your discretionary duty? What are your duties in the way of discretion versus ministerial acts? And how does that apply to this case, this condition of the road? That was never covered, and we think it should not have been a basis for a motion for direct averted. And we think that 3-102 provides a clear statutory duty for the county to maintain that road in a safe condition. Based on the evidence presented, they were instructed to notice, should have had notice, that there was a dangerous condition. All it would have taken was for the engineer to get out and walk the road. They didn't do that, and it's very reasonable to assume the jury could have come to that conclusion. And based on the standard, the courts have found that 3-102 is favorable to the plaintiff, and we think a motion for direct averted, the ruling thereon should be reversed, and the case remanded. Thank you. Thank you, counsel. We've heard the briefs and arguments of counsel. We'll take the case under advisory.